In the Supreme Court of Georgia

Decided: June 21, 2021

S20G1295.  WILSON v. THE STATE.

ELLINGTON, Justice.

In 2015, a Catoosa County jury found Timothy John Wilson, Jr., guilty of child molestation, statutory rape, and two counts of incest involving his 13-year-old stepdaughter, B. O., and the Court of Appeals affirmed the judgment of conviction. See *Wilson v. State*, 354 Ga. App. 64 (840 SE2d 601) (2020). Wilson petitioned this Court for a writ of certiorari, which we granted to consider "[w]hether the trial court erred in concluding that evidence of alleged prior offenses of child molestation was admissible under OCGA § 24-4-414."[1] As

---

[1] OCGA § 24-4-414 provides in full:

(a) In a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant.

explained below, the Court of Appeals' analysis of the trial court's

decision to admit Wilson's prior offenses of child molestation under

OCGA § 24-4-414 ("Rule 414") was flawed; however, its judgment

was correct. Therefore, we affirm the judgment of the Court of

Appeals.

In 2009, Wilson married B. O.'s mother and, shortly thereafter,

the family moved to Catoosa County. In October 2014, when B. O.

---

(b) In a proceeding in which the state intends to offer evidence under this Code section, the prosecuting attorney shall disclose the evidence to the accused, including statements of witnesses or a summary of the substance of any testimony that the prosecuting attorney expects to offer, at least ten days in advance of trial, unless the time is shortened or lengthened or pretrial notice is excused by the judge upon good cause shown.

(c) This Code section shall not be the exclusive means to admit or consider evidence described under this Code section.

(d) As used in this Code section, the term "offense of child molestation" means any conduct or attempt or conspiracy to engage in:

(1) Conduct that would be a violation of Code Section 16-6-4, 16-6-5, 16-12-100, 16-12-100.2, or 16-12-100.3;

(2) Any crime that involves contact between any part of the accused's body or an object and the genitals or anus of a child;

(3) Any crime that involves contact between the genitals or anus of the accused and any part of the body of a child; or

(4) Any crime that involves deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on a child.

was 13 years old, Wilson began to molest her. B. O. testified that Wilson made her watch pornographic videos on his phone while he rubbed her back in a sexually suggestive manner that made her uncomfortable. B. O. testified that, between October and Christmas Eve 2014, Wilson pursued her sexually. He touched her buttocks and genitals with his hand both over and under her clothing; he then engaged her in acts of oral sodomy; he penetrated her vagina with a sex toy; and he had sexual intercourse with her.

B. O. testified that these acts occurred in the home while her mother was at work and Wilson was supposed to be supervising her. Wilson told B. O. that he had to have sex with her because her mother was too fat. B. O. was afraid of Wilson, but she eventually made an outcry to her mother after Wilson told her he was going to have sex with one of B. O.'s underage friends.

When B. O.'s mother reported Wilson's conduct to the police, Wilson fled. Wilson argued at trial that B. O. had fabricated her claim of molestation to retaliate against him because he had disciplined her harshly, including prohibiting her from attending a

planned church retreat. As discussed in more detail below, the State also presented evidence that Wilson had previously molested his younger half-sister, P. W.[2]

1. Wilson contends that the evidence of his alleged prior offenses of child molestation involving P. W. did not satisfy the requirements for admission pursuant to Rule 414. Specifically, he argues that, because he was between the ages of 11 and 13 when the alleged prior offenses occurred, either he lacked the capacity to commit a crime under OCGA § 16-3-1,[3] or the State was required to prove by a preponderance of the evidence that he had the capacity to form the criminal intent necessary to commit the prior offenses, but the State failed to make that showing. He also argues that the evidence of his prior offenses of child molestation failed to satisfy the relevancy requirement of Rule 414.

---

[2] Because the sufficiency of the evidence supporting Wilson's convictions is not at issue in this appeal, we are reviewing only that evidence pertinent to our consideration of whether the trial court abused its discretion in admitting the prior offenses of child molestation pursuant to OCGA §§ 24-4-414 and -403.

[3] OCGA § 16-3-1 provides: "A person shall not be considered or found guilty of a crime unless he has attained the age of 13 years at the time of the act, omission, or negligence constituting the crime."

4

(a) *The trial court's pretrial evidentiary ruling.* The record shows that the State, pursuant to Rule 414 (b), gave the required pretrial notice of intent to present evidence of Wilson's prior offenses of child molestation. In its notice, the State asserted that, in 1986, when Wilson lived in Wyoming County, New York, he engaged in specific sexual acts involving P. W., who was then under the age of ten.

At a pretrial hearing, the prosecutor and defense counsel agreed to make a proffer as to what the evidence would show at trial. The prosecutor stated that P. W. and her mother would testify about the following: In 1986, Wilson and P. W. lived together in the same home. P. W. was about 5 or 6 years old when Wilson, her older half-brother, began to molest her. Over the course of a year, he engaged P. W. in acts of oral sodomy and sexual intercourse. The acts took place when P. W. and Wilson were unsupervised. When P. W. told her mother about the molestation, Wilson was removed from the home and placed in a juvenile facility. Wilson's counsel argued that Wilson was a child himself when the prior acts allegedly occurred.

5

He stated that Wilson was born on July 29, 1973, and that he was between 11 and 13 years old when the prior offenses allegedly occurred.[4] Defense counsel objected to the admission of the evidence under OCGA § 24-4-403 ("Rule 403"),[5] arguing that Wilson's youth at the time of the prior offenses, along with other factors, diminished the probative value of the evidence such that it was substantially outweighed by the danger of unfair prejudice. Counsel did not argue, however, that proof of Wilson's legal capacity was required for admission under Rule 414, nor did he seek a ruling on the applicability of OCGA § 16-3-1 or the common-law defense of infancy.

Following the pretrial hearing, the trial court overruled Wilson's objection to the admission of the evidence, and entered a written order ruling that the evidence was admissible under Rules

---

[4] The prosecutor did not dispute defense counsel's representations concerning Wilson's date of birth.

[5] OCGA § 24-4-403 provides: "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

414 and 403 as evidence of Wilson's motive and intent in the charged crimes. Before the evidence was admitted at trial, and again during the final charge, the trial court instructed the jury on the limited evidentiary purposes for which the jury could consider the prior offenses of child molestation. Wilson did not object to these instructions, nor did he request a jury instruction concerning the application of OCGA § 16-3-1 or the common-law infancy defense to the prior offenses of child molestation.

(b) *The evidence of Wilson's prior offenses of child molestation presented at trial.* The State presented evidence of the prior offenses of molestation through the testimony of P. W. and her mother. P. W. testified that Wilson molested her over the course of a year. She said that he molested her by touching her vagina with his hand. He also performed oral sex on her and had sexual intercourse with her when her parents were asleep, away from the house, or when he was supposed to be babysitting her. The molestation occasionally took place in the basement, and P. W. recalled an incident where Wilson left her alone and naked on a blanket while he, fully clothed, ran to

7

catch the school bus when it arrived.

P. W.'s mother testified that P. W. was six or seven years old when the molestation occurred, recalling that the events transpired sometime after the family had moved to the Buffalo, New York area in 1985, when P. W. was in first grade. Both P. W. and her mother testified that they believed Wilson was 15 years old when the molestation occurred. P. W. testified that she believed Wilson was "significantly older" than she was, "by at least 5 years." Neither the State nor Wilson presented evidence at trial of Wilson's date of birth.

P. W. also testified that, shortly after her mother had warned her about people who might touch her inappropriately, using the phrases "good touch" and "bad touch," she asked Wilson whether what he was doing to her was "bad touch." He replied that "bad touch did not include brothers." When P. W. began telling her mother what Wilson had been doing, he interrupted and "tried to shut [P. W.] up." P. W. and her mother both testified that, after the police were informed of the molestation, Wilson was removed from the home and

8

placed in a series of secure juvenile facilities.[6]

(c) *Wilson's prior acts of child molestation constitute a crime, as required for admission under Rule 414.* Wilson contends that the trial court should have excluded the evidence of his prior acts of child molestation because that evidence did not meet the requirements for admission under Rule 414. Specifically, he argues that the State failed to prove by a preponderance of the evidence that he was capable of forming the criminal intent required to commit an "offense of child molestation" because he was under the age of 13, which he asserts is the age of criminal responsibility in Georgia, when the prior acts of molestation allegedly occurred. See OCGA § 16-13-1. As recounted above, Wilson did not make this argument in the trial court, nor did he object on this ground when the evidence was admitted during trial. Thus, Wilson failed to preserve this claim of error for ordinary appellate review, and we therefore review the

---

[6] The prosecutor in this case did not introduce any evidence from the State of New York documenting that Wilson had been convicted or adjudicated delinquent of any act of child molestation or confined to any juvenile facility.

9

claim only for plain error. See OCGA § 24-1-103 (a), (d); *Gates v. State*, 298 Ga. 324, 327 (3) (781 SE2d 772) (2016).[7]

> To establish plain error, Wilson must show the following:
>
> First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citations and punctuation omitted.) *Gates*, 298 Ga. at 327 (3). See also OCGA § 24-1-103 (d) ("Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court."). As explained below, given current law

---

[7] Though Wilson made this argument in his brief in the Court of Appeals, the Court of Appeals did not address the argument or consider what role OCGA § 16-3-1 or the common-law infancy defense played in the admissibility analysis under Rule 414.

supporting the trial court's ruling, we cannot say that the ruling amounted to "clear and obvious error beyond reasonable dispute." (Citation and punctuation omitted.) *Westbrook v. State*, 308 Ga. 92, 101 (5) (a) (839 SE2d 620) (2020). See also *Simmons v. State*, 299 Ga. 370, 374 (2) (788 SE2d 494) (2016) ("An error cannot be plain where there is no controlling authority on point." (citation and punctuation omitted)). Moreover, "an error is not plain under current law if a defendant's theory requires the extension of precedent." (Citation omitted.) *Dunbar v. State*, 309 Ga. 252, 258 (3) (845 SE2d 607) (2020).

Rule 414 requires an "offense of child molestation" to be a crime. Rule 414 (a) provides: "In a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant." As Wilson correctly points out, an "offense of child molestation" is defined as "any crime" involving specified sexual acts or a "violation" of certain Georgia criminal statutes. See

11

OCGA § 24-4-414 (d). See also *King v. State*, 346 Ga. App. 362, 364 (1) (816 SE2d 390) (2018) (The defendant's prior offenses of child molestation were erroneously admitted because "the State failed to show that the [prior-offenses] victim was a minor under Georgia law or that [the defendant] engaged in sexual intercourse with her without her consent. As a result, the State failed to prove that [the defendant's] prior conviction constituted evidence of his 'commission of another *offense*' under the plain meaning of either OCGA §§ 24-4-413[8] or 24-4-414." (footnote omitted; emphasis in original)).

Given the plain language of Rule 414, the trial court must find, prior to admitting the proffered evidence, that the conduct alleged, if proven, would constitute a violation of one of the listed statutes or the commission of one of crimes specified in Rule 414 (d). This is a question of law for the trial court. See *United States v. Fetrow*, 76 M.J. 181, 185 (C.A.A.F. 2017) ("The question of whether the

---

[8] OCGA § 24-4-413 (a) provides: "In a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and may be considered for its bearing on any matter to which it is relevant."

admitted testimony constitutes evidence that the accused committed another offense of child molestation under [the military corollary to Rule 414] is one of law, reviewed de novo.").[9]

Wilson contends that OCGA § 16-3-1 provides that a person under the age of 13 categorically lacks the capacity to commit a crime. Wilson argues that, because he was under the age of 13 when most of the alleged prior acts of child molestation occurred, most of the acts did not constitute crimes; therefore, they did not satisfy this

---

[9] In interpreting Rule 414, we bear in mind that, when our General Assembly enacted our current Evidence Code, of which Rule 414 is a part, many provisions were borrowed from the Federal Rules of Evidence. When Georgia courts consider the meaning of these borrowed provisions, they look to decisions of the federal appellate courts construing and applying the federal rules, especially the decisions of the Eleventh Circuit. See *Parker v. State*, 296 Ga. 586, 592 (3) (a) (769 SE2d 329) (2015). We note that Military Rule of Evidence 414 (a), like Federal Rule of Evidence 414 (a), provides for the admission of prior offenses evidence in child molestation cases. The military rule provides that, "[i]n a court-martial in which the accused is charged with an offense of child molestation, evidence of the accused's commission of one or more offenses of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant." Similarly, the federal rule provides that, "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." Georgia's Rule 414 provides, as stated above, that such evidence "shall" be admissible and may be considered for its bearing on any matter to which it is relevant.

requirement for admission under Rule 414.[10] To the extent that

Wilson was 13 years old or older when the prior offenses occurred,

this argument fails. To the extent that Wilson was under the age of

13 when the prior acts occurred, this argument also fails because

this Court has held that "OCGA § 16-3-1 does not provide that a

person under 13 years of age is incapable of performing an act which

is designated a crime under the laws of Georgia[.]" (Citation and

punctuation omitted.) *Adams v. State*, 288 Ga. 695, 696 (1) (707

SE2d 359) (2011).

Although OCGA § 16-3-1 provides that "[a] person *shall* not be

considered or found guilty of a crime unless he has attained the age

of 13 years at the time of the act, omission, or negligence

constituting the crime[,]" (emphasis added), in *Adams*, a majority of

this Court, relying on "Committee Notes to § 26-701[11] of [Georgia's]

1968 Criminal Code," explained that "the General Assembly

---

[10] Wilson argues that he would have been 12 years old for almost eight months of 1986, when the molestation of P. W. was alleged to have occurred in the State's notice, and 13 years old for the last four months of 1986.

[11] Code Ann. § 26-701 was the predecessor to OCGA § 16-3-1 and was enacted in 1968. See Ga. L. 1968, p. 1249, § 1.

eliminated the conclusive presumption of incapacity to commit crime below the age of 10 years and lowered the rebuttable presumption of capacity to commit crime from 14 years to 13 years." (Punctuation omitted.) *Adams*, 288 Ga. at 696 (1). Further, citing *K. M. S. v. State,* 129 Ga. App. 683, 685 (200 SE2d 916) (1973), and other Court of Appeals cases that also relied on the Committee Notes, the majority asserted that the purpose of OCGA § 16-3-1 was to provide "a defense for [children under the age of 13] because of the social desirability of protecting those no more than 12 years of age from the consequences of criminal guilt." *Adams*, 288 Ga. at 697 (1). The majority concluded that OCGA § 16-3-1 does not provide that a child under the age of 13 is immune from prosecution or conclusively lacks the capacity to perform an act designated a crime under the laws of Georgia. The majority instead reasoned that the statute sets forth an affirmative defense that may be rebutted. *Adams*, 288 Ga. at 697 (1) ("With respect to any affirmative defense, 'unless the state's evidence raises the issue invoking the alleged defense, the defendant must present evidence thereon to raise the

15

issue.' OCGA § 16-1-3 (1).").[12]

Some of us doubt that *Adams* was correctly decided, given the plain text of OCGA § 16-3-1. See *Adams*, 288 Ga. at 703 (Hunstein, C.J., concurring specially).[13] But this is not the case for us to reconsider *Adams*, because we are reviewing Wilson's claim for plain error, and plain error cannot be based on an extension of existing precedent, much less on the overruling of existing precedent. See *Dunbar*, 309 Ga. at 258 (3). And under *Adams'* interpretation of

---

[12] In *Adams*, this Court concluded that "OCGA § 16-3-1 set forth an affirmative defense, because such a defense admits the doing of the act charged, but seeks to justify, excuse, or mitigate it." (Citation omitted.) 288 Ga. at 697 (1). This definition of an affirmative defense is overly broad. As we have since explained,

> in order to raise an affirmative defense, a criminal defendant need not "admit" anything, in the sense of acknowledging that any facts alleged in the indictment or accusation are true. Rather, in asserting an affirmative defense, a defendant may accept certain facts as true for the sake of argument, and the defendant may do so for the limited purpose of raising the specific affirmative defense at issue.

(Citations omitted.) *McClure v. State*, 306 Ga. 856, 864 (1) (834 SE2d 96) (2019).

[13] Then-Chief Justice Hunstein, who was joined by now-Chief Justice Melton, observed: "OCGA § 16-3-1 by its plain language establishes that children who commit criminal offenses at the time they are under the age of 13 are categorically ineligible to be prosecuted for or convicted of those offenses." *Adams*, 288 Ga. at 703 (Hunstein, C.J., concurring specially).

OCGA § 16-3-1, the trial court did not commit an obvious error by admitting the evidence of Wilson's prior offenses of child molestation.

*Adams* did not address the meaning of "capacity to commit a crime" in the context of OCGA § 16-3-1, or explain how a trial court is to determine whether the evidence is sufficient to show that a defendant had the capacity to commit a crime in any given case. Under Georgia's common-law infancy defense,[14] however, a defendant under the age of 13 is presumed to lack criminal

_____

[14] Georgia's infancy defense has its origins in the common law. "The Georgia General Assembly adopted the common law of England as of May 14, 1776, as Georgia's own law, except to the extent that Georgia's statutory or constitutional law displaced the common law, and that adoption remains in force today. See OCGA § 1-1-10 (c) (1)." *Glenn v. State*, 310 Ga. 11, 17 (1) (849 SE2d 409) (2020). In 1817, the legislature first codified the law of criminal responsibility in terms of mental capacity – other parts of the Code addressed other aspects of the law of criminal responsibility – providing that "[a] person shall be considered of sound mind, who is neither an idiot, a lunatic, [n]or afflicted by insanity, or who hath arrived at the age of fourteen years, or before that age, if such person knows the distinction between good and evil." Ga. L. 1817, First Division, p. 92, § 3. The Code also provided that "[a]n infant under age of nine years . . . shall not be found guilty of any crime or misdemeanor." Id. at p. 92, § 4. The Code was later amended to provide that "the age of criminal responsibility was 14, or before that age if the child knew the distinction between good and evil, but never under the age of 10." *Hatch v. O'Neill*, 231 Ga. 446, 447 (1) (202 SE2d 44) (1973) (citing the Penal Code of 1863, §§ 4190, 4191).

responsibility for his acts given his diminished capacity to appreciate the difference between right and wrong, but the State may rebut that presumption. Prior to the enactment of OCGA § 16-3-1, this Court explained the common-law infancy defense as follows:

> At common law[,] infancy is usually regarded as being divided into three distinct periods as to which distinct presumption for capacity or incapacity prevails. An infant under the age of 7 (in Georgia changed by statute to 10 years) . . . is presumed to have no capacity to commit a crime, and such presumption is conclusive and unrebuttable. After 14 years of age he is presumed to be capable of committing crime, and is responsible in the same manner as an adult. Between the ages of 10 and 14 there is a presumption in favor of his incapacity to form a criminal intent. According to the uniform current of authority, the burden of removing and rebutting this presumption of incapacity to commit a crime rests upon the State, and this must be done by the strongest and clearest evidence.

(Punctuation omitted.) *McRae v. State*, 163 Ga. 336, 337 (136 SE 268) (1926) (opinion of Russell, C.J.). See also *Ford v. State*, 100 Ga. 63, 63 (25 SE 845) (1896) ("A person between the ages of 10 and 14 years cannot be lawfully convicted of a crime or misdemeanor,

18

unless it appears from the evidence that he was capax doli[15] and the burden of proving that he was so rests upon the state." (citation omitted)). Although the Court in *McRae* was evenly divided over the sufficiency of a jury instruction concerning the burden of proving the 11-year-old defendant's capacity to commit a crime, the Court agreed that the State was required to rebut the presumption of incapacity by showing that the defendant, at the time the offense was committed, was capable of discerning between "right and wrong" or "good and evil." See 163 Ga. at 339 (opinion of Russell, C.J.), 341 (opinion of Hill, J.).

In this case, we are not evaluating whether the State presented evidence of Wilson's legal capacity sufficient to rebut an affirmative defense in a criminal prosecution. Rather, the issue is whether the trial court plainly erred in determining whether the evidence of Wilson's capacity was sufficient to show that he was capable of committing a crime, thereby satisfying this requirement for the

---

[15] The Latin phrase "capax doli" means "[c]apable of committing a crime or tort; esp., old enough to determine right from wrong." Black's Law Dictionary (11th ed. 2019).

19

admission of an offense of child molestation under Rule 414. Admission of a prior offense of child molestation under this rule does not require proof of a conviction or proof of guilt by evidence sufficient to sustain a conviction. See *Dixon v. State*, 341 Ga. App. 255, 258-259 (1) (a) (800 SE2d 11) (2017) (Criminal charges are not required for the admission of other-acts evidence pursuant to Rules 413, 414, or 415; in fact, a prior acquittal of the criminal charge will not necessarily preclude its admission as other-acts evidence due to the differing standards of proof involved.).

As we explained above, a prior offense of child molestation may be admitted under Rule 414 only if the prior act constitutes a specified crime, which is a question of law for the court. Whether the evidence shows that the defendant had the capacity to commit a crime at the time of the act in question, however, is a question of fact. No Georgia appellate court has addressed how a trial court should make this admissibility determination under Rule 414 when a question of fact exists as to the defendant's capacity to commit a crime at the time of the prior act, what standard of proof applies,

and upon whom that burden of proof falls. Such preliminary questions concerning the admissibility of evidence, however, are governed by OCGA § 24-1-104 ("Rule 104").

Rule 104 provides, in pertinent part:

(a) Preliminary questions concerning the . . . admissibility of evidence shall be determined by the court, subject to the provisions of subsection (b) of this Code section. In making its determination, the court shall not be bound by the rules of evidence except those with respect to privileges. Preliminary questions shall be resolved by a preponderance of the evidence standard.

(b) When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

In cases like this one, where the relevancy of the evidence depends on the resolution of a question of fact, "the judge considers only the evidence that the jury will hear at trial. If a reasonable jury could find that the preliminary facts are true, then the judge should admit the evidence for the jury's consideration." (Footnote omitted.) Paul S. Milich, GA. RULES OF EVIDENCE § 3:7 (Trial Court Rulings on Evidence) (Oct. 2020 Update). Similarly, the scheme for evaluating preliminary conditions of fact under the federal corollary

21

to Georgia's Rule 104[16] has been described as follows:

> [1] The judge screens the foundational testimony for the jury. The judge accepts the proponent's foundational testimony at face value and inquires only: If the jury chooses to believe this testimony, does it have sufficient probative value to support a permissive inference of the existence of the preliminary fact? If the answer is no, the judge sustains the objection, excluding the foundational testimony and the proffered item of evidence.
>
> [2] If the answer is yes, the judge overrules the objection, admitting the foundational testimony and the proffered item of evidence. The jury makes the real factual determination.

1 Robert P. Mosteller, et al., McCormick on Evid. § 53 (8th ed. updated Jan. 2020).

Applying Georgia's Rule 104 to the instant case, the trial court would have had to decide, prior to admitting the evidence of Wilson's

---

[16] Federal Rule of Evidence 104 now provides, in pertinent part:

(a) *In General.* The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.

(b) *Relevance That Depends on a Fact.* When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later.

alleged prior offenses of child molestation, whether the evidence was sufficient to allow a jury to find, by a preponderance of the evidence, that, at the time of the acts, Wilson knew right from wrong and, therefore, had the legal capacity to commit a crime. See OCGA § 24-1-104 (a) ("Preliminary questions shall be resolved by a preponderance of the evidence standard."); cf. *Bradshaw v. State*, 296 Ga. 650, 656 (3) (769 SE2d 892) (2015) ("Rules 104 and 404 (b) of the Federal Rules of Evidence do not require, as a condition of admissibility, a preliminary finding by the trial court that the government has proved the other crime by a preponderance of the evidence. Instead, . . . other acts evidence may be admitted [pursuant to Rule 404 (b)] if the court concludes that the evidence is sufficient for the jury to find by a preponderance of the evidence that the other act was committed." (citations omitted)). Because the State was the proponent of this evidence, the State bore the burden of producing evidence on the issue of Wilson's capacity. If the trial court found that the State had presented evidence sufficient to allow the jury to find by a preponderance of the evidence that Wilson knew

23

right from wrong, then the court "shall admit" the evidence for the jury's consideration "upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." OCGA § 24-1-104 (b).

Thus, the trial court was not required to conclude that Wilson had the legal capacity to commit a crime before admitting the evidence; rather, the function of the trial court was to determine whether the State had presented evidence that was sufficient to allow the jury to make that finding by a preponderance of the evidence, if that evidence was presented at trial. See *Strong v. State*, 309 Ga. 295, 301 (2) (a) (845 SE2d 653) (2020) ("[O]ther acts evidence may be admitted [under Georgia Rule 404 (b)] if the court concludes that the evidence is sufficient for the jury to find by a preponderance of the evidence that the other act was committed." (citation omitted)); *Bradshaw*, 296 Ga. at 656 (3) (same); *Dixon*, 341 Ga. App. at 258 (1) ("[A] trial court's decision to admit other acts evidence [pursuant to Rules 404 (b), 413 (a), and 414 (a)] will be affirmed if a jury could find by a preponderance of the evidence that the

24

defendant committed the act." (citations and punctuation omitted)).

In this case, Wilson did not make a capacity argument and seek a ruling on it in the trial court, and the trial court did not make an explicit finding concerning the sufficiency of the evidence on the issue of his capacity. However, the evidence discussed during the pretrial proffer and admitted at trial was sufficient to allow the jury to find by a preponderance of the evidence that Wilson appreciated the difference between right and wrong when he molested P. W. The evidence shows that Wilson engaged P. W. in the prior offenses of molestation when his parents were asleep or away from home, when he was responsible for supervising P. W., and when he was alone with P. W. in a secluded area of the house, like the basement. Wilson told P. W. that "bad touch" did not apply to him. He also tried to prevent P. W. from telling their mother what he had been doing. Wilson's efforts to conceal his acts of molestation and to prevent P. W. from disclosing them to their mother supported an inference that Wilson knew the difference between right and wrong, and was aware of and appreciated the wrongfulness of his conduct. Cf. *Lee v. State*,

306 Ga. App. 144, 146 (2) (701 SE2d 582) (2010) (Although the defendant was 12 years old at the time of the prior acts, his actions, including bullying his sister into performing oral sex on him and then bragging about his sexual prowess, were not the "faultless acts of an innocent child." (citations and punctuation omitted)); *Gilham v. State*, 232 Ga. App. 237, 239 (1) (501 SE2d 586) (1998) (Although the defendant was 12 or 13 at time he committed a sexual battery on his sister, his knowledge of the difference between a "good touch" and a "bad touch" and his admitted embarrassment about his conduct showed an awareness of its wrongfulness.).[17]

---

[17] We note that, in *Lee*, *Gilham*, and other "similar transaction" cases decided before the enactment of our current Evidence Code, courts did not evaluate the defendant's capacity to commit the prior crime as a requirement for whether the defendant had committed another offense of child molestation; rather, the defendant's youth was considered a factor when evaluating the probative value of the prior sexual offense as a similar transaction. In these cases, the defendant's youth at the time of the prior act was

> considered when deciding if the testimony should be admitted to show lustful disposition and inclination, i.e., bent of mind. The age of the defendant when the similar transaction occurred is relevant when balancing the probative value of the evidence against its potentially prejudicial impact. Depending on the circumstances of the case, the defendant's age can act to diminish the probative value of the evidence, resulting in the exclusion of the evidence as more prejudicial than probative. To that end, the State must show a "probative connection" between the similar transaction and the

Because the evidence that Wilson knew right from wrong at the time of the prior acts was sufficient to rebut the presumption of his incapacity to commit a crime under OCGA § 16-3-1 and *Adams*, the trial court was authorized to conclude that Wilson's prior acts of molestation constituted crimes and, therefore, met this requirement of Rule 414. Consequently, Wilson has not shown plain error.

(d) *Wilson's prior offenses of child molestation satisfy the relevancy requirement for admission under Rule 414.* Wilson also contends that, even if the evidence was sufficient to show that his prior acts of child molestation constituted crimes, the prior offenses were nevertheless inadmissible because they were not relevant to any of the charged offenses. We review this claim, which was raised in the trial court, for an abuse of discretion. See *McWilliams v. State*, 304 Ga. 502, 511 (3) n.15 (820 SE2d 33) (2018) (trial court did not

---

crime for which the defendant is presently being tried. (Citations and punctuation omitted.) *Ledford v. State*, 313 Ga. App. 389, 390 (1) (721 SE2d 585) (2011). Although these cases are not controlling law on whether a prior offense of child molestation is admissible, they do provide guidance on what kind of evidence may show under Rule 414 that an underage defendant can distinguish right from wrong.

27

abuse its discretion in admitting extrinsic-acts evidence pursuant to Rule 413); *Dixon v. State*, 350 Ga. App. 211, 213 (1) (828 SE2d 427) (2019) ("We review the admission of other acts evidence under Rules 413 and 414 for abuse of discretion."). As explained below, this claim lacks merit.

Rule 414 (a) provides: "In a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant."[18] Evidence is relevant if it has "any tendency

---

[18] The Court of Appeals erred in relying on *Pareja v. State*, 286 Ga. 117, 119 (686 SE2d 232) (2009), which set forth certain prerequisites for admitting similar transaction evidence under Georgia's former Evidence Code, as if that case was precedent governing the admissibility of evidence admitted pursuant to the current Code's Rules 403, 413, and 414. See *Wilson*, 354 Ga. App. at 67 (1) (a). See also *Bradshaw*, 296 Ga. at 655-656 (4) (Explaining that the "similar transaction" analysis was supplanted when the current Evidence Code took effect in 2013; the admission of such evidence is now evaluated under Rule 404 (b) using a three-part test adopted from federal cases.). The Court of Appeals also erred in conflating the analysis of whether evidence is relevant under Rule 414 with the analysis of whether the probative value of evidence is substantially outweighed by unfair prejudice under Rule 403. See *Wilson*, 354 Ga. App. at 68-70 (1) (b). Relevance should not be confused with probative value. As this Court has explained:

Relevance and probative value are related, but distinct, concepts. Relevance is a binary concept – evidence is relevant or it is not –

to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. The relevance standard under Rule 401 is a liberal one. See *State v. Jones,* 297 Ga. 156, 159 (2) n.2 (773 SE2d 170) (2015); see also *United States v. Glasser,* 773 F2d 1553, 1560, n.4 (11th Cir. 1985) (recognizing that Federal Rule of Evidence 401 broadly defines "relevant evidence")[19]; OCGA § 24-4-402 (all relevant evidence not otherwise prohibited shall be admissible).

Evidence that a defendant has engaged in a prior offense of child molestation is relevant to show, among other things, that the

---

but probative value is relative. Evidence is relevant if it has "*any tendency*" to prove or disprove a fact, whereas the probative value of evidence derives in large part from the *extent to which* the evidence tends to make the existence of a fact more or less probable.

(Emphasis in original.) *Olds v. State*, 299 Ga. 65, 75-76 (2) (786 SE2d 633) (2016).

[19] See *Walker v. State*, 306 Ga. 637, 645 (2) (b) (832 SE2d 783) (2019) ("OCGA § 24-4-401 tracks the language of Federal Rule of Evidence 401 as that rule read in 2011, so in interpreting OCGA § 24-4-401, we properly look to the decisions of the federal appellate courts – particularly the United States Supreme Court and the Eleventh Circuit – interpreting Rule 401, rather than to cases discussing relevance under the old Evidence Code." (citation omitted)).

defendant has "a disposition of character that makes it more likely that he did commit the act of child molestation charged in the instant case." *Eubanks v. State*, 332 Ga. App. 568, 571 (2) (774 SE2d 146) (2015) (citing *United States v. Levinson*, 504 Fed. Appx. 824, 827 (II) (a) (11th Cir. 2013)). See also *Robinson v. State*, 342 Ga. App. 624, 634 (4) (a) (805 SE2d 103) (2017) (same); *State v. McPherson*, 341 Ga. App. 871, 873-874 (800 SE2d 389) (2017) (same). Thus, Rule 414 (a) supersedes Rule 404 (b)'s general prohibition against the admission of propensity evidence.[20] See *Dixon*, 341 Ga. App. at 258 (1) (Georgia's Rule 413 and Rule 414 "supersede the provisions of OCGA § 24-4-404 (b) in sexual assault and child molestation cases." (citation omitted)). See also *United States v. Brimm*, 608 Fed. Appx. 795, 798 (11th Cir. 2015) ("[Federal] Rules 413 and 414 permit the introduction of propensity evidence and thus contain exceptions to Rule 404 (b)'s general ban on propensity evidence in 'sexual assault'

---

[20] OCGA § 24-4-404 (b) provides, in relevant part, "[e]vidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion," except as otherwise provided.

and 'child molestation' cases." (citation omitted)); 2 Weinstein's Federal Evidence § 413.04 (2020) ("Federal Rule of Evidence 414 (a) was designed to overcome the limitation imposed by [Federal] Rule [of Evidence] 404 (b) against using evidence of other crimes or bad acts to show that the defendant had the propensity to commit the act charged." (citations and footnote omitted)).

However, nothing in Rule 414 prohibits a party from offering evidence of prior offenses of molestation under Rule 404 (b) for other permissible purposes, such as to prove motive or intent. Indeed, propensity evidence often overlaps with or encompasses the narrower issues of motive and intent. See, e.g., *Levinson*, 504 Fed. Appx. at 827-828 (II) (a) (discussing how evidence of the defendant's prior conviction and alleged sexual abuse of his daughter was admissible under both Rule 414 to show propensity and Rule 404 (b) to show intent); *United States v. Cunningham*, 103 F3d 553, 556 (7th Cir. 1996) (discussing generally how propensity and motive evidence often overlap).

Because Wilson's prior offenses of child molestation showed

that he had the propensity, as well as the motive and intent, to engage in offenses of child molestation, the prior offenses evidence met the relevancy requirement of Rule 414 (a). See *Dixon*, 350 Ga. App. at 213-214 (1) (holding that a prior offense of child molestation was relevant to show "intent, identity, and propensity to commit the crimes"); *Brimm*, 608 Fed. Appx. at 797 (prior sexual offenses against minors relevant to show propensity); *United States v. LaJeunesse*, No. 09-324, 2010 U.S. Dist. LEXIS 102072 at *23, 2010 WL 3862829 at *2 (D. Minn. Sept. 28, 2010) (holding that defendant's prior federal juvenile child abuse adjudication was admissible under federal Rule 414 to demonstrate a pattern of sexual abuse of young boys). Thus, the trial court did not abuse its discretion in concluding that the prior offenses of molestation were relevant and offered for a proper purpose under Rule 414. The trial court's ruling that the requirements of Rule 414 have been satisfied, however, does not end the analysis for determining whether Wilson's prior offenses of child molestation are admissible. As explained in the next division, that evidence must also satisfy Rule

32

403.

2. Wilson argues, as he did at trial, that even if the evidence of his prior offenses of child molestation was relevant and offered for a proper purpose under Rule 414, it should have been excluded under Rule 403, despite Rule 414 (a)'s provision that evidence "shall" be admissible. Although this Court has not expressly held that evidence that satisfies Rule 414 may be excluded under Rule 403, we have held that the Rule 403 "exclusionary rule generally applies to all evidence" even when another provision of the Evidence Code provides that certain evidence "shall" be admissible. *State v. Orr*, 305 Ga. 729, 742 (3) (b) (827 SE2d 892) (2019) (citing *Chrysler Group v. Walden*, 303 Ga. 358, 363 (II) (A) (812 SE2d 244) (2018)). And the Court of Appeals, relying on decisions of the Eleventh Circuit, has held that Rule 403 is part of the overall admissibility inquiry under Rule 414. See, e.g., *McPherson*, 341 Ga. App. at 873-874 & n.8 (in applying Georgia's Rule 414, the court cited *United States v. McGarity*, 669 F3d 1218, 1244 (V) (B) n.32 (11th Cir. 2012), which held that evidence admitted under federal Rule 414 must also

satisfy Rule 403).[21] Several federal appellate courts "have stressed that Rule 403 remains an important safeguard against the admission of prejudicial evidence that is otherwise admissible under Rule 414." (Citation and punctuation omitted.) *United States v. Loughry*, 660 F3d 965, 970 (7th Cir. 2011).[22] Additionally, the application of Rule 403 to exclude evidence offered under Rule 414 eliminates due process concerns posed by evidence of a defendant's other offenses of child molestation that might be so prejudicial that the admission of that evidence would violate the defendant's fundamental right to a fair trial. See *Loughry*, 660 F3d at 970; see also *United States v. Castillo*, 140 F3d 874, 883 (10th Cir. 1998) ("[A]pplication of Rule 403 to Rule 414 evidence eliminates the due

[21] OCGA § 24-4-403 "materially tracks its counterpart in the Federal Rules of Evidence; we therefore . . . look to the decisions of the federal appellate courts, particularly the Eleventh Circuit, for guidance in applying this provision." *Strother v. State*, 305 Ga. 838, 847 (4) (d) n.6 (828 SE2d 327) (2019).

[22] See, e.g., *Brimm*, 608 Fed. Appx. at 798 (concluding that evidence admitted under federal Rule 414 must also meet the requirements of Rule 403); *United States v. Woods*, 684 F3d 1045, 1064 (11th Cir. 2012) (same); *McGarity*, 669 F3d at 1244 n.32 (same); see also *United States v. Jones,* 748 F3d 64, 70 (1st Cir. 2014) (same); *United States v. Seymour*, 468 F3d 378, 385 (6th Cir. 2006) (same); *United States v. LeMay*, 260 F3d 1018, 1027-28 (9th Cir. 2001) (same); *United States v. Sumner*, 119 F3d 658, 661 (8th Cir. 1997) (same); *United States v. Larson*, 112 F3d 600, 604-605 (2d Cir. 1997) (same).

process concerns posed by Rule 414."). Therefore, we must evaluate whether the trial court abused its discretion under Rule 403 in admitting evidence of Wilson's prior offenses of child molestation.

"We recognize that Rule 403 is an extraordinary remedy, and that in reviewing the admission of evidence under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Morgan v. State*, 307 Ga. 889, 897-898 (3) (d) (838 SE2d 878) (2020). See also *Brimm*, 608 Fed. Appx. at 797 ("Rule 403 is an extraordinary remedy employed only sparingly since it permits the trial court to exclude concededly probative evidence." (citation and punctuation omitted)). Further, when applying Rule 403 balancing to evidence of prior offenses of child molestation, the court must take into account that such evidence is naturally prejudicial. However, generally, it is not *unfairly* prejudicial; rather it is prejudicial for the same reason it is probative: it tends to prove the defendant's propensity to molest children. See *United States v. Kelly*, 510 F3d 433, 438 (4th Cir. 2007); see also *Anglin v. State*, 302

Ga. 333, 337 (806 SE2d 573) (2017) ("[I]n a criminal trial, inculpatory evidence is inherently prejudicial; it is only when *unfair* prejudice substantially outweighs probative value that [Rule 403] permits exclusion." (citation and punctuation omitted)); cf. *State v. Dowdell*, 335 Ga. App. 773, 780-781 (783 SE2d 138) (2016) (Peterson, J., concurring specially) (explaining in the similar context of Rule 413 that, while propensity ordinarily constitutes unfair prejudice, the text of the rule allowing propensity evidence in specific contexts reflects a policy decision by the rule's makers that the prejudice of propensity is not unfair in those contexts).

Finally, when applying Rule 403 balancing to prior child molestation offenses, the trial court must make a common sense assessment of all the circumstances that may logically bear on the probative or prejudicial value of the evidence, including the need for the evidence, the overall similarity between the prior offenses of molestation and the charged conduct, and the temporal remoteness of the prior offenses. See *Brimm*, 608 Fed. Appx. at 798; *United States v. Jernigan*, 341 F3d 1273, 1282 (11th Cir. 2003); *McAllister*

*v. State*, 351 Ga. App. 76, 82 (1) (830 SE2d 443) (2019). In this case, Wilson's age when he committed the prior offenses is also a circumstance to consider in weighing the probative value of the evidence. With these principles in mind, we now consider whether the trial court abused its discretion in admitting at trial evidence of Wilson's prior offenses of child molestation under Rule 403, based on its determination that the prior offenses had "significant and substantial" probative value that was not "substantially outweighed by undue prejudice[.]"

Wilson argues that (a) the probative value of the evidence is outweighed by its prejudicial effect under the circumstances because: (i) Wilson was too young to appreciate the wrongfulness of his acts; (ii) the prior acts of molestation were insufficiently similar to the charged acts; and (iii) the prior acts were too temporally remote. He also argues that (b) the trial court should have excluded the prior offenses of molestation under Rule 403 because there was a risk that the jurors would be confused about the application of the infancy defense to the prior offenses evidence.

(a) *The probative value of the evidence of Wilson's alleged prior offenses of child molestation was not substantially outweighed by the danger of unfair prejudice.*

(i) *Wilson's youth.* Assuming Wilson was under the age of 13 when he allegedly committed some or all of the prior offenses of molestation, the evidence admitted at trial was sufficient to rebut the presumption of incapacity due to infancy, as explained in Division 1. The evidence was sufficient to allow the jury to infer that Wilson understood the difference between right and wrong and appreciated the wrongfulness of his acts when he committed them. Wilson argues that the probative value of the prior offenses was diminished because he was allegedly a victim of child molestation himself and his conduct with P. W. was a product of that abuse; however, he presented no evidence in support of these claims either at the pretrial admissibility hearing or at trial.

(ii) *Similarity of the prior offenses of molestation to the charged offenses.* In this case, the evidence shows that the prior offenses of molestation were similar in the following particulars. Wilson was related to both of the underage girls, lived in the same household

with them, and was sometimes responsible for their supervision. He touched the genital areas of both girls above and under their clothing, he engaged them in acts of oral sodomy, and he had sexual intercourse with them. And Wilson tried to conceal his conduct and to prevent the girls from disclosing what he had done to them. See *Dixon*, 341 Ga. App. at 262 (1) (b) (holding that prior molestations were sufficiently similar to charged offense to be admitted under Rules 413, 414, and 403 when, notwithstanding that victims were different genders, each involved "inappropriate sexual contact" between defendant and child of similar age to whom defendant gained access through a relationship with the child's mother); *Eubanks*, 332 Ga. App. at 569-570 (1) (holding that prior offenses were sufficiently similar to charged offense to be admitted under Rules 414 and 403 when all involved minor girls of similar ages and allegations that defendant digitally penetrated minors' vaginas).

(iii) *Temporal remoteness*. The trial court noted during the hearing that the nearly 30-year period between the commission of the alleged prior acts of child molestation and the charged offenses

39

was significant. Rule 414 imposes no time limit on prior offenses for which evidence may be admitted, although remoteness in time may decrease probative value under Rule 403. See *United States v. Meacham*, 115 F3d 1488, 1492 (I) (B) (10th Cir. 1997); *United States v. Cardenas*, 895 F2d 1338, 1344 (II) (A) (11th Cir. 1990) ("[T]he more time separating the charged and prior offense, the less probative value can be assigned the extrinsic evidence." (citation omitted)). Sufficient factual similarity of prior child molestation offenses to the charged offense can outweigh concerns of remoteness in time. See *United States v. Mercer*, 653 Fed. Appx. 622, 628 (II) (B) (10th Cir. 2016). "[A]s a practical matter, evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding very substantial lapses of time in relation to the charged offense or offenses." *Meacham*, 115 F3d at 1492 (I) (B) (citation omitted). In this case, the substantial similarities between the prior offenses of child molestation and the charged offenses, as just discussed, allowed the trial court to assign substantial probative

value to the prior offenses, despite the lapse in time.[23]

(iv) *Prosecutorial need.* Finally, although Wilson has not contested in the trial court or on appeal the State's need for the evidence of his alleged child molestation offenses involving P. W., the State argued that it needed the evidence to show Wilson's motive and intent and to rebut Wilson's defense that B. O. had fabricated her claims of child molestation. For this reason, we agree that the trial court was authorized to find that the prosecutor's need

---

[23] See *Maner v. State*, 358 Ga. App. 21, 24 (1) (852 SE2d 867) (2020) (holding that prior molestation was sufficiently similar to charged offenses for evidence to be admitted under Rules 414 and 403, despite lapse of more than 50 years, when all offenses involved minor girls of similar ages who lived in same household as defendant); *Dixon*, 341 Ga. App. at 262 (1) (b) (holding that "[t]he passing of seven to thirteen years between [the defendant's] molestation of [a prior victim] and the victim in this case does not mandate the conclusion that the trial court abused its discretion in its application of the [Rule 403] balancing tests, particularly [when the defendant's] access to the children was based upon a relationship with their mother"); *Eubanks*, 332 Ga. App. at 570 (1) (holding that passage of 17 years between prior child molestation offenses and current charges, "[a]lthough somewhat remote in time, . . . did not require exclusion because of the similarity of the events and the resulting probative value of the challenged evidence"); *United States v. Benally*, 500 F3d 1085, 1092 (III) (10th Cir. 2007) (holding that evidence of two rapes more than 30 years prior to charged offense was admissible under Rules 413, 414, and 403, despite remoteness in time, when the incidents all involved young females, mostly young female family members, of similar ages, and many of the prior incidents, like the charged offense, involved the use of force).

increased the probative value of the prior child molestation evidence.[24]

Given the evidence presented on each of the above factors and viewing the evidence, as we must, in the light most favorable to its admission, we cannot say that the trial court abused its discretion in determining that the probative value of the prior child molestation evidence was not substantially outweighed by the danger of unfair prejudice. See *Dixon*, 350 Ga. App. at 214-215 (1).

(b) *The probative value of the alleged prior offenses of child molestation was not substantially outweighed by the danger of confusion of the issues.*

Wilson argues that evidence of his prior offenses of molestation was unusually confusing because, before the jury could even consider those prior offenses as evidence, it was required to conduct a "trial within a trial" and resolve questions concerning how old

---

[24] See *United States v. King*, 713 F2d 627, 631 (11th Cir. 1983) ("[T]he more essential the evidence [to the prosecution], the greater its probative value, and the less likely that a trial court should order the evidence excluded."); *Robinson*, 342 Ga. App. at 635 (evidence of a prior, similar sexual assault was probative to rebut the defendant's claim that the victim lacked credibility); *Kritlow v. State*, 339 Ga. App. 353, 356 (2) (793 SE2d 560) (2016) (evidence of prior, similar sexual assaults was probative to rebut defendant's claim that the victim fabricated account of sexual assault).

Wilson was when he committed each of the prior offenses; whether the presumption of incapacity due to infancy applied to him; and whether the State had met its burden of rebutting the presumption of infancy.

At trial, however, Wilson did not elicit or present evidence establishing his age when he committed the prior offenses, nor did he present evidence from which the jury could infer that he lacked the capacity to commit those offenses. In fact, the jury could have concluded that Wilson was 15 years old when he committed the prior offenses because P. W. and her mother both testified that they believed he was then 15 years old. The record also shows that Wilson did not request a jury instruction on how the jury should consider or resolve questions of fact concerning Wilson's age or capacity, and the trial court did not give any. Wilson has not argued that such an instruction should have been given sua sponte. However, the trial court did give preliminary and final charges instructing the jury on how it should consider evidence of prior offenses of child molestation generally. Given that this evidence did not present the "trial within

43

a trial" problem Wilson asserts and because the jury was instructed on how to consider the prior-offenses evidence, Wilson has not demonstrated how the jury would have been confused by the admission of this evidence.

For these reasons, the trial court did not abuse its discretion in admitting, pursuant to Rules 403 and 414, Wilson's prior alleged child molestation offenses.

*Judgment affirmed. All the Justices concur, except McMillian, J. disqualified.*